# EXHIBIT A-9

**CAUSE NO. 92874**

| | | |
|---|---|---|
| VEX ROBOTICS, INC., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | 354TH JUDICIAL DISTRICT |
| | § | |
| CROSS THE ROAD ELECTRONICS, LLC and | § | |
| JONATHAN JACK, | § | |
| | § | HUNT COUNTY |
| Defendants. | § | |

**DEFENDANT CROSS THE ROAD ELECTRONICS, LLC'S
ORIGINAL ANSWER AND SPECIAL EXCEPTIONS TO PLAINTIFF'S
FIRST AMENDED PETITION AND COUNTERCLAIM**

**TO THE HONORABLE JUDGE OF SAID COURT**:

CROSS THE ROAD ELECTRONICS, LLC, Defendant in the above-entitled and numbered cause, files this Original Answer and Special Exceptions to Plaintiff's First Amended Petition and Counterclaim, and in support thereof would respectfully show:

**I.
GENERAL DENIAL**

1. Defendant CROSS THE ROAD ELECTRONICS, LLC ("Defendant" or "CTRE") generally denies each and every allegation set forth in Plaintiff's First Amended Petition and would demand strict proof thereof in accordance with Rule 92 of the Texas Rules of Civil Procedure.

**II.
SPECIAL EXCEPTIONS**

2. Plaintiff's First Amended Petition (the "Amended Petition") is defective and obscure because it omits and/or deliberately misstates facts relating to the express terms of the written agreement CTRE and Vex Robotics, Inc. ("Plaintiff" or "VEX") entered into on April 21, 2014, a copy of which is incorporated herein as Exhibit A (the "2014 Agreement").

3.      Although Plaintiff did not attach the 2014 Agreement to its Amended Petition, the document was incorporated by reference. *See Huntress v. Hickory Trail Hospital, L.P.*, 2020 WL 2781795 at *7 (Tex. App. – Dallas, May 29, 2020) (stating "[w]ith regard to incorporate by reference, magic language is not necessary; it is only that the party makes the court aware of that particular evidence to which the party is referring"). Additionally, Plaintiff has undisputed, actual notice of the 2014 Agreement and has relied upon this document in framing its Amended Petition. Therefore, the Court should be entitled to consider the 2014 Agreement in ruling on this special exception, and, in support, CTRE would show the Court as follows.

4.      A special exception may challenge the petition as a whole, or a divisible portion of the petition. *In re Shire PLC*, 633 S.W.3d 1, 12 (Tex. App. – Texarkana, Aug. 6, 2021) (quoting 2 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, *Texas Civil Practice* § 9.25[a] (2d ed. 2021) (Westlaw). A special exception challenging a claim will be grounded on one or more of three propositions: (1) that no legal rule justifies a recovery on a claim or defense of the type alleged; (2) that, though there is a legal rule that might be applicable, the petition or answer omits one or more allegations essential to bring the claim or defense within its scope; or (3) that, though there is a legal rule that might be applicable, the petition or answer shows on its face facts negating its application. *Id.* In addition, any other pleading defect or omission may be urged though the special exception, including that the pleading[ ] fail[s] to give fair notice, is ambiguous, or is not verified as required. *Id.*

5.      CTRE asserts that the Plaintiff's Amended Petition is defective because it pleads facts that affirmatively negate allegations supporting its cause of action against CTRE for breach of contract.

6.      Specifically, Paragraphs 12 and 13 of the Amended Petition state that "In April 2014, Vex and CTRE executed a written contract whereby the parties agreed to jointly develop **motors** . . ." and "[u]nder the terms of the written contract, Vex and CTRE would be jointly responsible for design engineering of the **motors** (emphasis added)." *See* Pl.'s 1st Am. Pet ("Am. Pet."), ¶¶ 12 and 13. However, Section 3.1 of the 2014 Agreement expressly provides that CTRE and Vex agreed to "jointly develop **two (2) Developed Controllers** specifically designed for the FIRST Robotics Competition" (emphasis added). Exh. A, Section 3.1. "Developed Controller" is defined in the 2014 Agreement as "electronic speed controller(s) which will be co-developed by Vex and CTRE under the terms and conditions of the contract herein." *Id.*, Section 1.1.

7.      The Falcon 500, the subject of Plaintiff's claim for breach of the 2014 Agreement, is a motor, not an electronic speed controller.[1] By stating in its Amended Petition that CTRE and Vex agreed by written agreement to jointly develop motors, instead of controllers, Plaintiff creates a demonstrably false impression as to the scope and purpose of the 2014 Agreement to bootstrap its claims for breach relating to the Falcon 500 motor.

8.      The express terms of the 2014 Agreement affirmatively negate Plaintiff's allegations that the parties agreed to design and develop *motors* under a written contract. Therefore, CTRE specially excepts to the allegations in the Amended Petition, detailed above, as well as any other allegation which implies CTRE and Vex agreed to jointly design and development a motor, and, specifically, the Falcon 500, under the 2014 Agreement. *See, e.g.*, Am. Pet, ¶¶ 21, 23, 28, 29, 30, 36, and 37.

---

[1] Plaintiff's Amended Petition consistently refers to the Falcon 500 as a "motor."

### III.
### <u>AFFIRMATIVE DEFENSES</u>

9.      Plaintiff has failed to state a claim upon which relief can be granted.

10.     Plaintiff's claims are barred by the applicable Statute of Frauds.

11.     Plaintiff's claims are barred in whole or part by Vex's fraudulent conduct.

12.     Plaintiff's claims are barred in whole or part by Vex's failure to mitigate damages.

13.     Plaintiff's claims are barred in whole or part by Vex's unclean hands and/or other inequitable conduct.

14.     Plaintiff's claims are barred in whole or part by offset, modification and/or novation.

15.     Plaintiff's claims are barred in whole or part by Vex's prior material breach.

16.     Plaintiff's claims are barred by the doctrines of laches, estoppel, waiver, ratification and/or consent.

17.     CTRE asserts that no express written agreement exists between Plaintiff and CTRE pertaining to the Falcon 500 or ownership of any intellectual property rights associated therewith.

18.     CTRE is the sole author, creator and owner of the Software in the Falcon 500.

19.     Plaintiff did not make any substantial and valuable contribution to the Software in the Falcon 500 which could have been copyrighted by Plaintiff or vest ownership, solely or jointly, in Plaintiff.

20.     In the alternative, CTRE asserts that if any intellectual property right in the Falcon 500 is found to be co-authored and/or co-owned by CTRE and Plaintiff, CTRE has an undivided ownership interest in the Falcon 500 and unlimited rights to make, use, sell and disclose the intellectual property in the Falcon 500 without the permission of Plaintiff.

21.     CTRE reserves the right to supplement and amend this answer and plead additional defenses hereafter.

**IV.**
**ATTORNEYS' FEES**

22.     CTRE is entitled to recover its reasonable and necessary attorneys' fees as provided by Tex. Civ. Prac. & Rem. Code 38.001(8).

## CROSS THE ROAD ELECTRONICS, LLC'S ORIGINAL COUNTERCLAIM

### I.
### PARTIES

1.      Counter-Plaintiff Cross the Road Electronics, LLC ("CTRE" or "Counter-Plaintiff) is a Michigan limited liability company with its principal place of business at l6065 Leone Drive, Macomb Township, Macomb County, Michigan 48042. CTRE has already appeared in this lawsuit.

2.      Upon information and belief, Counter-Defendant Vex Robotics, Inc. ("Vex" or "Counter-Defendant") is a Texas corporation with its principal place of business at 6725 W. FM 1570, Greenville, Hunt County, Texas 75402. Vex has already appeared in this lawsuit.

### II.
### JURISDICTION AND VENUE

3.      The Texas state court does not have subject-matter jurisdiction over CTRE's counterclaim under 17 U.S.C. § 101 *et seq*. or 28 U.S.C. §2201 *et seq.* because it requires a U.S. federal district court to interpret and apply provisions of the U.S. Copyright Act and the Federal Declaratory Judgment Act, which falls squarely and exclusively within the original federal question jurisdiction of the United States district courts. 28 U.S.C. § 1338(a). CTRE has concurrently filed a Notice of Removal to the United States District Court for the Northern District of Texas, Dallas Division on these grounds.

4.      Plaintiff/Counter-Defendant Vex has appeared and availed itself of the Court's jurisdiction by commencing this action in this district.

5.      Defendant/Counter-Plaintiff CTRE has appeared by filing its answer and special exceptions to Plaintiff's Amended Petition and counterclaim in this action.

6.      Venue is proper in the United States District Court, Northern District of Texas,

Dallas Division as CTRE's counterclaim arises under 28 U.S.C. § 2201 *et seq.* and 17 U.S.C. §§ 101 *et seq.* from the same subject matter and transactions in this proceeding.

### III.
### FACTS

**Introduction to CTRE**

7. CTRE is a provider of embedded software solutions applicable to various control systems, including, robotics, Diver Propulsion Vehicles (DPVs), and motor controls. CTRE has a reputation as the market leader for advanced control system and performance motor control products used for FIRST Robotics Competition ("FRC" or "FIRST") – an international high school robotics competition.

8. CTRE is a member of FIRST's "Control System Committee" and has previously developed core "control system" hardware components (such as the PCM, VRM, and PDP) which were integrated by FIRST into the set of components teams must use in the FRC when building and programming their robots (the "FRC Control System"). CTRE also developed software tools for use by FRC teams while ensuring all their software and hardware products integrated successfully with those specified by FIRST (the "FRC Software Ecosystem").

**CTRE'S In-House Development of Brushless Motor Controllers**

9. Since early in the company's founding, CTRE has worked to create and bring to market an integrated brushless motor and brushless motor controller for the FRC.

10. Brushless motors are preferred to brushed motors in the motor control community, because they have significantly higher efficiency and performance and a lower susceptibility to mechanical wear.

11. In early 2013, CTRE began in-house development of a stand-alone brushless motor controller compatible with off-the-shelf brushless motors for use in undersea scooters. Later that

year, CTRE successfully ran a prototype for a brushless motor controller, the VORTEX. The VORTEX controller began being shipped to customers in 2014.

12.     Thereafter, CTRE adapted the VORTEX to create a brushless motor controller prototype designed for specific use by the FRC. This controller prototype was named the CYCLONE.

13.     The software code in the VORTEX and CYCLONE would later be adapted to create the Talon FX brushless motor controller – the first high powered brushless motor controller which could be integrated with a brushless motor as a single unit and used at the FRC.

**The April 2014 Agreement between CTRE and Vex**

14.     In April 2014, CTRE signed an agreement with Vex Robotics, Inc. a subsidiary of Innovation First International, Inc (IFI). The 2014 Agreement allowed Vex to resell CTRE's products used in the FRC Control System and provided that the parties would jointly develop two (2) new electronic speed controller(s) specifically designed for the FRC (the "2014 Agreement"). *See* Exh. A.

15.     The two (2) electronic speed controllers designed and developed under the 2014 Agreement were the Victor SP (later updated to the Victor SPX) and the Talon SRX (the "Developed Controllers").

16.     The Victor SPX and Talon SRX are brushed motor controllers.

17.     CTRE exclusively created the electrical design files and wrote the entire software code for the Developed Controllers.

18.     Vex provided design review feedback and sourced and provided feedback on the selection of components but did not contribute to the development and creation of the electrical design files or software code used in the Developed Controllers.

19.     CTRE has not assigned its intellectual property rights in the Developed Controllers to Vex. As a result, CTRE is the sole owner of the intellectual property comprising the electrical design files and software in the Developed Controllers.

**The Development and Creation of the Falcon 500 Brushless Motor**

20.     On or about May 2016, CTRE and Vex began discussions to build a brushless motor design which would be compatible with a brushless motor controller.

21.     Vex robotics was responsible for sourcing the components and provided input on component selection based on their availability from Vex's preferred suppliers.

22.     During sourcing, Vex utilized CTRE as subject matter experts on brushless motors since CTRE had expertise in brushless designs and had already successfully brought a brushless motor controller to market.

23.     The parties did not execute a written agreement with respect to the design, development, manufacturing, and sale of the brushless motor design.

24.     Ultimately, an integrated brushless motor and brushless motor controller solution was created and named the Falcon 500.

25.     The software associated with the Falcon 500 includes (i) the firmware embedded in the integrated brushless motor controller (hereinafter, "Talon FX") (ii) the applications customers use to update the Falcon 500's internal processor or adjust the settings of the motor and (iii) the larger software ecosystem which allows users to program their robots which must successfully "talk to" the Falcon 500 (collectively the "Software").

26.     CTRE solely and exclusively wrote every line of code comprising the Software and is the sole author and owner of the intellectual property rights therein.

27.     Moreover, CTRE solely and exclusively created the electrical design files for the

Falcon 500 and Talon FX.

28.    CTRE selected the electrical components, created the electrical schematic design and printed circuit board (PCB) layout for the Talon FX and Falcon 500, and designed all performance and functional test fixtures (e.g., mechanical mounting and selection of test equipment, and selecting the development board to drive the tests), and developed and wrote all the test-fixture software.

29.    Vex manufactured the Falcon 500. The Falcon 500 was brought to market in late 2019 and made available for use in the 2020 FRC season.

30.    In mid-July 2023, following a series of customer complaints relating to mechanical quality issues with the Falcon 500, CTRE sent an email and certified letter to Vex stating, in relevant part, "CTR Electronics is not willing to continue to license our IP for any additional production runs of the Falcon 500. In addition, we are not interested in licensing our IP to Innovation First International, Inc (IFI) or any of its subsidiaries for future products at this time. After reviewing our past relationship, it is our conclusion that IFI has not lived up to their commitments regarding on-time delivery, supply-chain management, product quality, on-time payment and responsiveness. This has resulted in negative experiences for CTR Electronics customers, a decrease in customer satisfaction, and a negative impact to the CTR Electronics reputation within our marketplace."

31.    Vex responded by filing the present lawsuit.

**IV.**
**DEFENDANT/COUNTER PLAINTIFF'S COUNTERCLAIM**

**Count One – Declaratory Judgment Regarding Authorship and Ownership of the Software (Copyright Act 17 U.S.C. § 201 *et seq.*)**

1.      CTRE incorporates and reasserts the allegations above.

2.      Counter-Defendant has filed a lawsuit against CTRE claiming that "the combination of intellectual property incorporated into the Falcon 500 and, in particular, the resulting Falcon 500 design, is jointly owned by VEX and CTRE." Am. Pet., ¶ 23.

3.      No written agreement exists between CTRE and Vex which would control or assign the ownership of CTRE's copyrights in the Software to Vex or any other intellectual property rights of CTRE in the Falcon 500. CTRE is the sole author and owner of the Software, the copyrights under 17 U.S.C § 201(a), and any intellectual property developed by CTRE applicable to the Falcon 500.

4.      Therefore, an actual, present and justiciable controversy between CTRE and Counter-Defendant has arisen concerning the Software's authorship and ownership under the U.S. Copyright Act.

5.      As a result, CTRE seeks:

      a.      a declaratory judgment that CTRE is the author of the Software under 17 U.S.C. § 201(a);

      b.      a declaratory judgment that all copyrights in the Software vested in CTRE under 17 U.S.C. § 201(a);

      c.      a declaratory judgment that the Software is not a "joint work" between CTRE and VEX as defined in 17 U.S.C. § 101.

d.      a declaratory judgment that Vex is not an author of the Software under 17 U.S.C. § 201(a);

e.      a declaratory judgment that CTRE's copyrights in the Software was not transferred to VEX in accordance with the standards of transfer set forth in 17 U.S.C. § 201(d) or 17 U.S.C. § 204(a);

f.      a declaratory judgment confirming that CTRE owns the copyrights and all attendant intellectual property rights in the Software.

g.      a declaratory judgment that CTRE has the right to prevent Vex from manufacturing and selling any products which incorporate the Software and any other intellectual property exclusively owned by CTRE;

h.      a declaratory judgment that CTRE has not, and is not, in breach of any purported contract, express or implied, as claimed by Vex; and

i.      a declaratory judgment that CTRE is not obligated to pay any of the production costs associated with Vex's unauthorized and unlawful production of Falcon 500 products as of the filing date of Plaintiff's Original Petition.

## V.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Counter-Plaintiff CROSS THE ROAD ELECTRONICS, LLC prays for judgment against Counter-Defendant for damages and relief as follows:

a.      That Plaintiff/Counter-Defendant takes nothing by way of its claims and causes of action asserted against CTRE in this action;

b.      For a declaratory judgment ordering that (i) CTRE is the author and sole owner of the Software under 17 U.S.C. § 201(a) and all intellectual property rights in

the Software; (ii) the Software vested in CTRE under 17 U.S.C. § 201(a); (iii) the Software is not a "joint work" between CTRE and Vex as defined in 17 U.S.C. § 101; (iv) VEX is not an author of the Software under 17 U.S.C. § 201(a) and has no ownership interest in the intellectual property related to the Falcon 500; (v) ownership of the copyright in the Software was not transferred to Vex in accordance with the standards of transfer set forth in 17 U.S.C. § 201(d) or 17 U.S.C. § 204(a); and, (vi) that CTRE has not, and is not, in breach of any purported contract, express or implied, as claimed by Vex and is not obligated to pay any of the production costs associated with Vex's unauthorized and unlawful production of Falcon 500 products as of the filing date of Plaintiff's Original Petition.

c.     For a preliminary and permanent injunction enjoining and restraining Counter-Defendant, its subsidiaries, divisions, branches, affiliates, predecessors or successors in business, parents and wholly owned or partially owned entities of the Counter-Defendant, and any entities purporting to act for or on behalf of the foregoing, including any agents, employees, representatives, officers, directors, servants, partners, and those persons in active concert or participation with them, from using, marketing, manufacturing or selling products containing CTRE's Software and intellectual property in the Falcon 500.

d.     For all reasonable and necessary attorneys' fees CTRE has incurred and will continue to incur in defending itself in this action against Plaintiff's claims.

e.     For pre-judgment and post-judgment interest as provided by law;

f.     For all further relief to which CTRE may be justly entitled.

Dated: November 22, 2023                    Respectfully submitted,

                                            **HARPER & BATES LLP**

                                            */s/ Scott L. Harper*
                                            Scott L. Harper
                                            Texas Bar No. 00795038
                                            Scott.Harper@harperbates.com
                                            ---
                                            Jordyn E. Hendrix
                                            Texas Bar No. 24120359
                                            Jordyn.Hendrix@harperbates.com

                                            1717 Main Street, Suite 3550
                                            Dallas, Texas 75201
                                            214-238-8400 | Main
                                            214-238-8401 | Fax

                                            **COUNSEL FOR CROSS THE ROAD
                                            ELECTONICS, LLC**

                        **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing has been served on all counsel of record in accordance with the Texas Rules of Civil Procedure on November 22, 2023.

                                            */s/ Scott L. Harper*
                                            Scott L. Harper

# EXHIBIT A

# CONTRACT

# VEX Robotics & Cross the Road Electronics

### April 2014

This contract (the "Contract") is made by and between Cross the Road Electronics, LLC ( "CTRE"), a Michigan limited liability company, with offices at 56752 Mound Rd, Shelby TWP, MI 48316, and VEX Robotics, Inc. ( "VEX"), a Texas corporation, with offices at 1519 Interstate 30 West, Greenville, TX 75402, as of the 21st day of April, 2014 (the "Effective Date").

## 1. <u>Definitions</u>

The following terms, when capitalized in the text of this Contract, have the following meanings.

1.1 **"Developed Controller"** means the electronic speed controller(s) which will be co-developed by VEX and CTRE under the terms and conditions of the contract herein.

1.2 **"FRC Legal Controller"** means speed controllers manufactured by either VEX or CTRE that are legal for the 2014 FRC competition season. Specifically, these are the Victor 888, Talon and Talon SR, Jaguar speed controllers, and the Motor Controller 29.

1.3 "**2015 Control System Products**" means the items listed in Addendum A.

1.4 "**FIRST Robotics Competition**" or **"FRC"** means the means the large scale high school robotics competition organized and operated by the US Foundation for the Inspiration and Recognition of Science and Technology.

1.5 "**FIRST Tech Challenge**" or **"FTC"** means the means the large scale high school robotics competition organized and operated by the US Foundation for the Inspiration and Recognition of Science and Technology.

1.6 **"Product Revenue"** means the amount received, less discounts, as a result of Developed Controller sales.

1.7 **"Non-Recurring Manufacturing Cost"** means any manufacturing costs that are one-time expenses for the purpose of manufacturing and testing of the Developed Controller (i.e. tooling and test fixtures).

1.8 **"Product Cost"** means the total cost of goods sold for the Developed Controller.

1.9 **"Product Profit"** means Product Revenue minus Product Cost.

1.10 "**Supplier**" means Innovation First Trading, Inc., which will act as a manufacturing agent on behalf of VEX in Asia. The agent fee will not exceed 8% of the Recurring Manufacturing Cost.

1.11 **"Recurring Manufacturing Cost"** means the cost associated with the manufacturing of a Developed Controller, each time that a Developed Controller is produced.

1.12 **"Qualified Third Party"** means a qualified company not affiliated with VEX or CTRE that purchases Developed Controllers for the purpose of resell. A company is considered qualified if the company has executed an exclusive distribution agreement approved by both parties and adheres to a minimum advertised price (MAP) mutually agreed upon by VEX and CTRE.

## 2. Term

The initial term of the Contract ("Initial Term") shall commence on the Effective Date and shall expire on April 30, 2017.  The Initial Term shall automatically extend for up to five (5), one (1) year extensions (each a "Renewal Term") unless a party provides to the other party written notice of termination not later than the applicable execution dates set forth on Addendum C.  The Initial Term and any Renewal Term(s) shall constitute the "Term" of the Contract.

## 3. Terms and Conditions

3.1. VEX and CTRE agree to jointly develop two (2) Developed Controllers specifically designed for the FIRST Robotics Competition.  These Developed Controllers can be sold to any customer, subject to Section 3.9.

3.2. VEX will discontinue all manufacturing of their FRC Legal Controllers, starting on the Effective Date, except as noted in Addendum B.

3.3. CTRE will discontinue all manufacturing of their FRC Legal Controllers, starting on the Effective Date, except as noted in Addendum B.

3.4. VEX and CTRE agree to the responsibilities as described in sections 3.4.1 – 3.4.4.

3.4.1. Both companies will be responsible for design engineering and will both fully participate in formal, and informal, design reviews.

3.4.2. Actual task responsibilities will be mutually agreed upon between both parties, but will be divided equally to the best of VEX's and CTRE's ability.

    a.    Electrical detail design – CTRE lead

    b.    Mechanical detail design – VEX lead

    c.    Software design – Joint development.  CTRE lead all CAN communication protocol development.

    d.    Sourcing and manufacturing engineering – VEX lead

    e.    Test fixtures – Joint development

3.4.3. VEX will source, procure, and project manage production manufacturing.

3.4.4. Both CTRE and VEX must sign off on all approval samples during engineering prototype, (EP), pre-production (PP), and production start (PS) phases of manufacturing.

3.4.5. Both CTRE and VEX must approve supplier quotes before any Non-Recurring and Recurring Manufacturing Costs are incurred.

3.5. VEX and CTRE must mutually agree to inventory stocking levels before any production purchase orders are issued.

3.6. Developed Controller minimum retail price will be mutually agreed upon between VEX and CTRE.

3.7. VEX is responsible for initial payment to Supplier for all manufacturing costs incurred.  CTRE will pay 50% of all manufacturing costs per section 3.8.

3.8. VEX and CTRE will equally share all Product Profit and manufacturing costs as follows:

3.8.1. Non-Recurring Manufacturing Cost will be split equally between VEX and CTRE. At the time of Supplier invoice for such costs, VEX shall invoice CTRE for their half to be paid within 30 days.

3.8.2. Recurring Manufacturing Costs will be split equally between VEX and CTRE. At the time of Supplier invoice for such costs, VEX shall invoice CTRE for their half to be paid within 30 days.

3.8.3. Profit share is calculated at the end of each month throughout the Term. VEX and CTRE will each receive 50% of the Product Profit for each developed Controller sold during the Term. The selling party will provide payment to the other party within 15 days after the close of each month.

3.9. Either party may sell Developed Controllers to a Qualified Third Party for the purpose of resell subject to a mutually agreed upon price between VEX and CTRE.

3.10. VEX and CTRE will mutually agree how to handle excess Victor 888, Talon, Talon SR, and Jaguar inventory prior to the start of the 2015 FRC Season.

3.11. CTRE agrees to supply VEX with 2015 Control System Products at prices listed in Addendum A.

3.12. CTRE and VEX agree to not design, manufacture, or assist in design for any speed controllers used for FTC without a mutually agreed upon joint development for any such controller.

## 4. Trademark Licenses

4.1. VEX hereby grants CTRE, and CTRE hereby accepts, subject to the terms and conditions of this Contract, a nonexclusive, fully paid-up, royalty-free, worldwide license to use the VEX marks listed in Appendix E ("VEX Marks") solely in connection with marketing and electronic and/or print advertising material directed to the Developed Controllers. The license with respect to the VEX Marks shall terminate upon any termination of this Agreement.

4.2. CTRE hereby grants VEX, and VEX hereby accepts, subject to the terms and conditions of this Contract, a nonexclusive, fully paid-up, royalty-free, worldwide license to use the CTRE marks listed in Appendix E ("CTRE Marks") in connection with marketing and electronic and/or print advertising material directed to the Developed Controllers. The license with respect to the CTRE Marks shall terminate upon any termination of this agreement.

4.3. Each party agrees to the Quality Control measures outlines in Section 14 below, and shall use the marks of the other party only in connection with the owning party's use guidelines. The parties further acknowledge and agree that its use of the marks of the other party shall inure solely to the benefit of the owning party.

4.4. THE MARKS ARE LICENSED TO THE OTHER PARTY "AS IS,' WITHOUT ANY WARRANTIES OF ANY KIND. ALL WARRANTIES ARE SPECIFICALLY EXCLUDED, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 5. Termination

5.1. Either party may terminate this Contract for cause, upon the other party's failure to cure a substantial or material breach of the terms of this Contract within thirty (30) days following delivery by the terminating party to the breaching party of written notice describing the breach.

5.2. The "Date of Termination" for section 5.1 shall be set forth in the notice of termination by a Party, and shall not in any case be earlier than thirty (30) days following the date of delivery of written notice of termination.

5.3.  In the event that the Developed Controller is disallowed for use in FRC at any time during the term, through no fault of CTRE or VEX, this Contract will be terminated immediately per section 5.4.

5.4.  Upon the termination of this Contract due to 5.3, VEX and CTRE will equally share all outstanding Initial Manufacturing Costs and all costs to deplete Developed Controller inventory.  Inventory cost for each Developed Product will be equal to the calculated Product Cost.

5.5.  Upon the termination of this Contract for any reason, the parties agree to use their commercially reasonable efforts to wind down the collaborative efforts undertaken in this Contract, with the objective of minimizing disruption for teams for the remainder of the competition season, and to discontinue use of the Marks of the other party, provided, however, that (i) neither party shall be under any obligation to recall any products or materials in which the Marks of the other party were included pursuant to the terms of this Contract; and (ii) each party shall have the right to  (A) sell any Developed Controller products in inventory of such party or in process of manufacturing or delivery at the time of termination and (B) for a period of 180 days, distribute any advertising or promotional materials including the Marks of the other party which were printed and otherwise comply with the terms and conditions of this Agreement prior to the date of such termination.

5.6.  Upon termination of this Contract, both parties may continue to manufacture and sell Developed Product for their own commercial reasons.

## 6.  Limitation of Liability

EXCEPT FOR LIABILITY UNDER SECTION 17 BELOW, IN NO EVENT SHALL EITHER PARTY HAVE ANY LIABILITY TO THE OTHER PARTY, OR TO ANY THIRD PARTY, FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, HOWEVER CAUSED, AND ON ANY THEORY OF LIABILITY, ARISING OUT OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO LOSS OF ANTICIPATED PROFITS.

## 7.  Payment and Other Sale Terms and Conditions

7.1.  If CTRE purchases Developed Controller from VEX, VEX will Invoice CTRE in a mutually-acceptable format for the quantity of Developed Controllers shipped at a price per unit equal to 50% of the Product Cost.  Payment terms are net thirty (30) days.  Product Profit is calculated per section 3.8.

7.2.  Each month during the Term, VEX and CTRE shall make available, via a mutually acceptable method, data regarding shipments made of the Developed Product to customers for each month.

## 8.  Support

8.1.  VEX shall provide online and phone support for Developed Product consistent with the support policies described on its website at http://www.vexrobotics.com/support/, as of the Effective Date.

8.2.  CTRE shall provide e-mail and phone support for Developed Product consistent with CTRE support policies.

8.3.  Additionally, VEX and CTRE agree that a common RMA tracking document will be used for all returns of the Developed Product.  Either CTRE or VEX can issue an RMA for the Developed Product.  All customer returns must follow the prescribed return policies of VEX and CTRE.

## 9.  Secrecy

The parties have executed a separate confidentiality, nondisclosure agreement governing their conduct with respect to one another's confidential or proprietary information.  Nothing herein shall affect the

terms and conditions of same.

## 10. Indemnification

10.1. VEX hereby agrees to indemnify and hold harmless CTRE, its officers, directors, employees, agents and representatives (collectively or separately, a "CTRE Indemnified Party"), from third party claims, damages, and expenses (including, with limitation, reasonable attorneys' fees) to the extent same arises from (a) any claim that the Developed Controllers infringe on the intellectual property rights of any third party; and/or (b) based upon the acts or omissions of VEX employees or agents. VEX shall have complete control of any such actions provided that CTRE shall cooperate with VEX in defense of such actions and may retain counsel of its own selection and at its own cost.

10.2. CTRE shall indemnify and hold harmless VEX, its officers, directors, employees, agents and representatives (the "VEX Indemnified Parties"), against any and all liability, claims, demands, losses, damages, judgments, expenses and/or costs (including reasonable attorneys' fees and related costs) (a) any claim that the Developed Controllers infringe on the intellectual property rights of any third party; and/or (b) based upon the acts or omissions of CTRE employees or agents. CTRE shall have complete control of any such actions provided that VEX shall cooperate with CTRE in defense of such actions and may retain counsel of its own selection and at its own cost.

10.3. VEX and CTRE shall share equally all liability, claims, demands, losses, damages, judgments, expenses and/or costs (including reasonable attorneys' fees and related costs)  from third party claims, damages, and expenses (including, with limitation, reasonable attorneys' fees) to the extent same arises from (a) any product liability claim to the extent same directly relates to the Developed Controllers; (b) bodily injury (including death) to any person and/or damage to property, provided same directly results from the Developed Controllers.

## 11. Warranty

VEX and CTRE will warrant to consumers that the Developed Product will be free from defects in manufacturing, materials and workmanship for a period of three (3) months from the date of purchase. This warranty will cover normal use within the limits specified as stated in the applicable data sheets, and will not cover abuse, misuse, incorrect wiring, alterations, connector damage, or robot competition damage.

## 12. Ownership

12.1. CTRE acknowledges that VEX is not transferring to CTRE any intellectual property rights in the Victor or Jaguar that are owned by VEX, its affiliated entities and/or its licensors.

12.2. VEX acknowledges that CTRE is not transferring to VEX any intellectual property rights in the Talon and Talon SR that is owned by CTRE or its licensors now or in the future.

12.3. VEX and CTRE acknowledge that any intellectual property created during the development of the Developed Product is owned equally by VEX and CTRE including, but not limited to, all CAD data, design drawings, manufacturing drawings, fixture drawings, tooling, fixtures, firmware, embedded software, application software, and software tools for use on Developed Product only.

## 13. General Provisions

13.1. In all matters relating to this Contract, VEX and CTRE shall act as independent third parties. Neither party will represent that it has any authority to assume or create any obligation, expressed or implied, on behalf of the other party, or to represent the other party as agent, employee, or in any other capacity. Neither party shall have any obligation, expressed or implied, except as expressly set forth herein.

13.2.   Neither party may assign any rights, duties, obligations or privileges under this Contract without the prior written consent of the other party, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, a party may assign its rights, duties, obligations or privileges under this Contract without the prior written consent of the other party in connection with an acquisition, merger, sale or other transfer of all or substantially all of its business, assets or outstanding stock.

## 14. Quality Control

The parties shall not distribute any goods, provide services or any related materials (collectively, the "Materials"), either directly or via any third-party, that bear the Marks of the other party without receiving prior written approval of the manner in which the other party's Marks are depicted in representative samples of the Materials, which approval shall not be unreasonably withheld.  The parties agree not to use the Marks of the other party in connection with any Materials that are defamatory or obscene, or that one would reasonably consider inappropriate.  The parties shall at all times observe high standards of quality in the production and provision of the goods and/or services with which the Marks of the other party are to be used, and shall comply with all reasonable quality standards for same.

## 15. Notices

All notices required under this Contract shall be in writing and shall be sent to the other party via overnight delivery or certified mail, United States mail return receipt requested, at the address set forth above, unless written notification of a change of address has been provided by the other party.

## 16. Effect of Waiver

Any waiver by the parties of a breach of any term or condition of this Contract shall not be considered a waiver of any subsequent breach of the same or any other term or condition hereof.

## 17. Entire Agreement

This Contract constitutes the entire agreement of the parties and expressly supersedes any oral or written agreements between the parties up to and including the date of execution, excluding the confidentiality agreement referenced in Section 16 above.  Any and all amendments, alterations or additions to this Contract must be in writing and executed by each party's duly authorized representative.

## 18. Applicable Law

THE VALIDITY, INTERPRETATION AND PERFORMANCE OF THIS CONTRACT WILL BE CONTROLLED AND CONSTRUED UNDER THE LAWS OF THE STATE OF TEXAS APPLICABLE TO CONTRACTS ENTERED INTO AND WHOLLY TO BE PERFORMED IN TEXAS, WITHOUT REGARD TO CONFLICTS OF LAWS PROVISIONS THEREOF.

## 19. Titles

The titles and subtitles used herein are not part of this Contract and are included solely for the convenient reference to the paragraphs hereof and shall not affect the interpretation of the various terms and conditions hereof.

## 20. Counterparts

This Contract may be executed in counterparts.  For purposes hereof, a facsimile copy of this Contract, including the signature page hereto, shall be deemed to be an original.   Notwithstanding the foregoing, the parties shall deliver original execution copies of this Contract to one another as soon as practicable

following execution thereof.

## 21.Signatures

This contract is not valid without the completed signatures & dates below of the authorized representatives of both CTRE and VEX.

*CTRE Signature*

The following authorized representative of CTRE hereby agrees to enter into the above contract with VEX.

_____   4/22/14

Mike Copioli                     Date

Owner, Cross the Road Electronics, LLC

*CTRE Signature*

The following authorized representative of CTRE hereby agrees to enter into the above contract with VEX.

_____   4/22/2·14

Omar Zrien                       Date

Owner, Cross the Road Electronics, LLC

*VEX Signature*

The following authorized representative of VEX hereby agrees to enter into the above contract with CTRE.

_____

Paul D. Copioli                 Date 4/21/2014

President, VEX Robotics, Inc.

## Addendum A: 2015 Control System Products

Items listed below make up the FRC Control System products designed and manufactured by CTRE that are specified for use in the 2015 through 2019 FRC Competition Seasons.

| Item | Retail Price | CTRE Price to VEX |
|------|--------------|-------------------|
| Voltage Regulator Module | TBD | TBD |
| Power Distribution Panel | $199 | TBD |
| Pneumatics Control Module | $89 | TBD |

## Addendum B: FRC Legal Controllers Exempt from Clauses 3.2 & 3.3

The Table below lists FRC Legal Controllers that are either entirely exempt from clauses 3.2 & 3.3 and quantities that are currently in the manufacturing process that are allowed to be completed.

| FRC Legal Controller | Qty Exempt | Reason for Exemption | Manufacturing Completion Date |
|----------------------|------------|----------------------|-------------------------------|
| Motor Controller 29 | All | Used for VEX Classroom Kits | N/A |
| Talon SR | 3,000 | Currently in production | March 31, 2014 |

# Addendum C: Contract Term

| Contract Year (Season) | | Duration | Execution Date |
|---|---|---|---|
| 2015 | Year 1 | 1 May 2014 - 30 April 2015 | At Contract Signing |
| 2016 | Year 2 | 1 May 2015 - 30 April 2016 | At Contract Signing |
| 2017 | Year 3 | 1 May 2016 - 30 April 2017 | At Contract Signing |
| 2018 | Renewal 1 | 1 May 2017 - 30 April 2018 | 30 April 2016 |
| 2019 | Renewal 2 | 1 May 2018 - 30 April 2019 | 30 April 2017 |
| 2020 | Renewal 3 | 1 May 2019 - 30 April 2020 | 30 April 2018 |
| 2021 | Renewal 4 | 1 May 2020 - 30 April 2021 | 30 April 2019 |
| 2022 | Renewal 5 | 1 May 2021 - 30 April 2022 | 30 April 2020 |

# Addendum D: Marks

## VEX Marks:

1. VEX ®
2. VEXpro ®
3. VEX IQ ®

## CTRE Marks: