IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VEX ROBOTICS, INC., | § | |
| | § | |
| Plaintiff-Counterdefendant, | § | |
| | § | |
| VS. | § | Civil Action No. 3:23-CV-2586-D |
| | § | |
| CROSS THE ROAD ELECTRONICS, | § | |
| LLC, | § | |
| | § | |
| Defendant-Counterplaintiff. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff-counterdefendant Vex Robotics, Inc. ("VEX") against defendant-counterplaintiff Cross the Road Electronics, LLC ("CTRE"),[1] VEX moves to compel CTRE to produce certain information and documents in response to interrogatories and requests for production ("RFPs"), and to amend the scheduling order and trial setting order. For the reasons that follow, the court grants VEX's motion to compel and denies VEX's motion to amend the scheduling order except to reset the trial to the two-week docket of November 3, 2025.[2]

---

[1]VEX alleges claims for promissory estoppel, breach of contract, breach of fiduciary duty, unfair competition, conversion, and trespass to chattels. CTRE counterclaims for declaratory judgment regarding authorship and ownership of software, breach of contract and course of dealing, and breach of implied contract and course of dealing.

[2]In the briefing, CRTE advises that its lead counsel is specially set for trial on October 28, 2025. The court can accommodate that trial, if it proceeds as scheduled, by commencing the trial of this case on November 10, 2025, which is still within the two-week docket period.

I

VEX is a company that supplies educational and competition robotics products, and CTRE is a company that provides embedded software for various control systems and motor control products. In April 2014 VEX and CTRE entered into a written agreement (the "2014 Agreement") providing that the parties would jointly develop two new brushed electronic speed controllers: the Victor SP (later updated to the Victor SPX) and the Talon SRX. VEX maintains that this was a partnership contract under which the parties entered into a partnership relationship and agreed, among other things, to be jointly responsible for designing and engineering the controllers.[3]

Under the agreement, "any intellectual property created during the development of the Developed Product is owned equally by VEX and CTRE including, but not limited to, all CAD data, design drawings, manufacturing drawings, fixture drawings, tooling, fixtures, firmware, embedded software, application software, and software tools for use on Developed

_____

[3]CTRE contends that this agreement did not create a partnership relationship, and it points to language in the agreement that says:

> [i]n all matters relating to this Contract, VEX and CTRE shall act as independent third parties. Neither party will represent that it has any authority to assume or create any obligation, expressed or implied, on behalf of the other party, or to represent the other party as agent, employee, or in any other capacity. Neither party shall have any obligation, expressed or implied, except as expressly set forth herein.

D. Resp. (ECF No. 56) at 10. VEX posits that, under a totality-of-the-circumstances test, a partnership was created.

-2-

Product only." 2d Am. Compl. (ECF No. 33) ¶ 12. CTRE created the electrical design files and wrote the software code for these two controllers.

The 2014 Agreement was effective from April 2014 to April 30, 2022. According to VEX, the parties continued to work together under the terms of the 2014 Agreement even after it expired; after beginning to discuss building a "brushless" motor[4] in 2015, the parties agreed to modify the 2014 Agreement to jointly develop a new product, a brushless motor called the Falcon 500; and the parties agreed that they would equally share the profits and manufacturing costs of designing, developing, and manufacturing the Falcon 500 motors and that CTRE and VEX would jointly own any intellectual property created during the development of the motors, including developed software and source code.[5]

The parties began pre-selling the Falcon 500 motors in October 2019 and began shipping the motors in January and February of 2020. They continued to sell the Falcon 500 motors until, on July 11, 2023, CTRE's Chief Operating Officer sent VEX's Chief Executive

---

[4]"Brushless" motors are preferable to "brushed" motors in the motor control community because they are more efficient, quieter, and less susceptible to mechanical wear.

[5]VEX maintains that this modification of the 2014 Agreement is memorialized in multiple writings published and exchanged between CTRE and VEX, including the publishing of similar language on CTRE's website and VEX's website that the Falcon 500, powered by Talon FX, is a brushless motor co-developed through a collaborative partnership between VEX Robotics and Cross the Road Electronics. VEX contends that, by writing and embedding virtually identical statements about their modification to the 2014 Agreement in their electronic records, the parties executed a written modification to the agreement. CTRE, to the contrary, posits that the parties did not execute a written agreement with respect to the design, development, manufacturing, and sale of the new brushless motor design, but it asserts that the parties did operate on agreed terms that they would share 50% of the product profit for each Falcon 500 sold.

Officer an email stating that CTRE would no longer license CTRE's IP for additional production runs of the Falcon 500 or other future products. According to VEX, CTRE then prevented VEX's customers from using the software that enabled them to operate the existing Falcon 500 motors. Vex also maintains that CTRE has refused to reimburse VEX for its share of the manufacturing costs and expenses for the Falcon 500 motors, or to allow VEX or its customers to access the software to operate the motors.

VEX contends that, unbeknownst to VEX, between March and October 2023, CTRE entered into a competing business relationship with WestCoast Products and Design, LLC ("WestCoast"), one of VEX's competitors, to design a competitive brushless motor called the Kraken X60. Vex maintains that this conduct constituted a breach of the fiduciary duty that CTRE owed VEX as a result of the partnership agreement.

The parties dispute, *inter alia*, the authorship and ownership of the Falcon 500 software in question. VEX contends that the software at issue was developed during the time that the 2014 Agreement's terms governed the parties pursuant to a "modified partnership contract," and, per the terms of the agreement, was jointly owned by VEX and CTRE. CTRE posits that CTRE exclusively wrote every line of code comprising the firmware embedded in the Falcon 500, the applications that customers use to update the Falcon 500's internal processor and adjust the settings of the motor, and the larger software ecosystem that allows users to program their robots, and thus that CTRE is the sole author and owner of this intellectual property. CTRE also contends that VEX has not paid CTRE its 50% share of the profits from the Victor SPX and Talon SRX controllers sold since June 2023, despite

-4-

continuing to manufacture and sell these products, nor has VEX paid the 50% of the product profit owed for each Falcon 500 product sold since the first quarter of 2023.

VEX now moves to compel CTRE to produce certain information and documents in response to interrogatories and RFPs and to amend the scheduling order and trial setting order. CTRE opposes the motions, which the court is deciding on the briefs, without oral argument.[6]

## II

The court turns first to VEX's motion to compel. VEX requests that the court overrule CTRE's objections to VEX's first set of interrogatories Nos. 6, 8, and 9 and to its RFP Nos. 2, 4, 6, 7(i-l), 8, and 13 and compel discovery responses.[7]

## A

Fed. R. Civ. P. 26(b)(1) provides that a party may obtain discovery of

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

---

[6]In the parties' March 25, 2025 stipulation and request for status conference, they "request a status conference to the extent that the Court deems it necessary to reset any other deadlines in the Court's scheduling order." Stip. (ECF No. 60) at 1. Because the court does not think it necessary to convene a status conference considering the relief granted in this memorandum opinion and order, it is deciding these motions without oral argument.

[7]VEX also mentions CTRE's objection to RFP No. 3, but it does not specifically request that production be compelled. Despite noting its objection, CTRE maintains that it will produce the non-privileged responsive documents.

proposed discovery outweighs its likely benefit.

"Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (Ramirez, J.) (quoting *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001)).

Rule 33 governs interrogatories, and Rule 34 governs RFPs. Rule 33(b)(4) provides that "[t]he grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Similarly, under Rule 34(b)(2)(B), "[f]or each item or category [requested], the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Rule 34(b)(2)(C) provides that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Rule 37 authorizes a motion "for an order compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory submitted under Rule 33 or fails to produce documents as requested under Rule 34. Rule 37(a)(3)(B).

To be excused from producing requested information or materials, "[t]he rule in the Fifth Circuit is that 'the party resisting discovery must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" *ATC Media, LLC v. Michaels Stores, Inc.*, 2023 WL 5538996, at *2 (N.D. Tex.

Aug. 28, 2023) (Godbey, C.J.) (quoting *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)); *see also Gondola v. USMD PPM, LLC*, 223 F.Supp.3d 575, 580 (N.D. Tex. 2016) (Horan, J.) ("[A] party seeking to resist discovery on [the ground that it is outside the scope permitted by Rule 26(b)(1)] still bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address . . . the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."). This standard applies to both interrogatories and RFPs. *See McLeod*, 894 F.2d at 1485. General or boilerplate objections are invalid. *See, e.g.*, *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 590 (N.D. Tex. 2017) (Horan, J.); *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (Horan, J.) ("So-called boilerplate or unsupported objections—even when asserted in response to a specific discovery request and not as part of a general list of generic objections preceding any responses to specific discovery requests—are [] improper and ineffective and may rise (or fall) to the level of what the Fifth Circuit has described as 'an all-too-common example of the sort of "Rambo tactics" that have brought disrepute upon attorneys and the legal system.'" (quoting *McLeod*, 894 F.2d at 1484-86)).

B

VEX contends that CTRE's objections to the identified interrogatories and RFPs are insufficient under Rules 33 and 34 because they are boilerplate and nonspecific. CTRE counters that the disputed discovery requests are not relevant and constitute an impermissible fishing expedition, are overbroad and not sufficiently limited in time, and the source code requests specifically are overbroad and unduly burdensome. CTRE also maintains that the disputed discovery seeks highly sensitive and confidential business information of a third party and that CTRE is under contractual obligations not to disclose the requested information.

C

The court first addresses CTRE's objections to VEX's interrogatories Nos. 6, 8, and 9.[8]

1

CTRE makes the same objection to VEX's interrogatories Nos. 6, 8, and 9:

> CTRE objects to this interrogatory as overbroad and irrelevant because it is not reasonably tailored to lead to the discovery of admissible evidence and constitutes an impermissible fishing expedition. CTRE further objects to this interrogatory to as it calls for the disclosure of information documents, or things subject to confidentiality agreements, protective orders, and/or

---

[8]VEX's interrogatory No. 6 seeks information about the similarities between the Falcon 500 and the Kraken X60 motors. Interrogatory No. 8 requests information about all revenue generated and profits earned by CTRE or WestCoast from the sale of the Kraken X60 motor, and interrogatory No. 9 seeks discovery about the steps that CTRE and WestCoast took to create, design, develop, and manufacture the Kraken X60 motor.

> any other obligations under which [CTRE] is required to protect and/or maintain the confidentiality of any third party's documents or information. [CTRE] further objects to this request as overbroad as it seeks the disclosure of trade secret, proprietary and/or confidential business information of Defendant and unrelated third parties.

P. Br. (ECF No. 49) at 16. These objections are both insufficiently specific and substantively deficient.

### 2

As an initial matter, VEX maintains that these identical, boilerplate objections are not sufficiently specific to satisfy Rule 33(b)(4)'s requirement that objections "be stated with specificity." The court agrees. CTRE's vague, boilerplate objections do not explain specifically how the requests at issue are not relevant, are overbroad, or are insufficiently tailored, nor does CTRE provide any detail to suggest that the requested discovery is not proportional to the needs of the case. Moreover, the objection fails to explain what requested information is subject to a confidentiality agreement or constitutes a trade secret or other proprietary information. Such boilerplate objections are insufficient to resist a discovery request. *See Heller*, 303 F.R.D. at 483.

### 3

In addition to the insufficient specificity of the objections, they are in large part not substantively valid.

First, to justify its relevance objection, CTRE posits in its brief (although it did not include this explanation in its objections to the discovery requests) that there was no legal

partnership between VEX and CTRE and therefore that CTRE owed no duties that would have been violated by its relationship with WestCoast. CTRE therefore contends that any information or documents related to CTRE's alleged breach of any duty or unfair competition by its collaboration with WestCoast is irrelevant and need not be disclosed. Because the existence of a legal partnership and the duties that accompany such a relationship are still in dispute, the court will not make a definitive determination about this question at this time. Instead, the court will conclude at this stage of the case that the requested discovery is relevant to VEX's claims and within the scope of permissible discovery.

Concerning the assertion that the requests might call for the disclosure of "information, documents, or things subject to confidentiality agreements, protective orders, and/or any other obligation" to keep a third party's documents and information confidential, CTRE provides no explanation for why the court's protective order permitting designation of answers and materials as "Confidential Information" or "Confidential Attorney Eyes Only Information" is insufficient to protect this information. Further, information is not immune from discovery requests merely by virtue of being subject to a confidentiality or nondisclosure agreement. *See, e.g.*, *Shvartser v. Lekser*, 270 F.Supp.3d 96, 98 (D.D.C. 2017) ("As a general rule, confidentiality agreements will not stand as a barrier to discovery between two parties in litigation." (citation omitted)). Nor is requested information necessarily excluded from discovery by virtue of being "trade secret, proprietary and/or confidential business information." *See, e.g.*, *Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 501 (D. Minn. 2011) ("Where the parties have agreed to a protective order,

-10-

particularly one with 'Attorneys' Eyes Only' designation, even a very sensitive trade secret will be sufficiently protected and should be produced if relevant."). Accordingly, CTRE has not presented a valid ground for refusing to produce the requested information.

D

The court next turns to CTRE's objections to VEX's RFPs.

1

CTRE's objections to RFPs Nos. 2, 3, 4, 6, 8, and 13[9] are largely similar to those lodged to the interrogatories. The primary difference is that each objection (except the one to RFP No. 3) includes a single sentence that notes what specifically is being requested in its contention that each request is overbroad and unduly burdensome (although without explaining why this makes the request overbroad and unduly burdensome), and that each request is not sufficiently limited in time.

2

These largely boilerplate objections suffer from the same lack of specificity as do the

_____

[9]RFP No. 2 asks for "[a]ny licensing agreements or assignments of the rights to any person or company of any [software, hardware, and code] used in connection with the Falcon 500 or the Kraken X60 motors." P. Br. Ex. D (ECF No. 49-4) at 6. RFP No. 3 seeks all software associated with the Falcon 500 motor. *Id.* RFP No. 4 asks for "[a]ll software associated with the Kraken X60 motor[.]" *Id.* RFP No. 6 requests "[a]ll contracts or agreements entered into between CTRE and any third-party developer to create, design, develop, or write the software or firmware code for the Kraken X60 motor." *Id.* at 7. RFP No. 8 asks for "[a]ll documents and communications . . . sent, delivered[,] or transferred between or among CTRE and WestCoast referring or relating to [certain topics]." *Id.* at 9-11. And RFP No. 13 seeks "all documents and communications . . . referring or relating to the Kraken X60 motor." *Id.* at 12.

objections to interrogatories Nos. 6, 8, and 9: they fail to explain how the individual requests are overbroad, unduly burdensome, insufficiently limited in time and/or scope, or cover material that is privileged, proprietary, and/or subject to some sort of nondisclosure or confidentiality agreement. They are also substantively deficient to the extent that CTRE objects on the grounds that requested material includes proprietary, sensitive, and/or trade secret information or that it is subject to confidentiality agreements, protective orders, and/or other obligations to protect a third party's documents or information. *See supra* § II(C)(3).

3

Insofar as some of the objections suggest that the requests are insufficiently limited in time, these objections fail to explain how the requests are insufficiently limited and fail to account for the fact that the instructions accompanying the RFP specify that, "[u]nless otherwise stated, the applicable period is January 1, 2015 to the present."[10]

4

Among the boilerplate objections, the only explanation for an objection appears in the objection to RFP No. 2. CTRE asserts that, by requesting the production of "any licensing agreements or assignments of the rights to any person or company" of code used in

---

[10]CTRE makes the argument in its brief, although not in its objections, that the court should limit the scope and time of the disputed documents and information through July 11, 2023 because it is undisputed that the business relationship between the parties terminated on that date. Although that may have been the date that the business relationship ended, VEX may seek discovery relating to CTRE's profits from the date of its alleged breach to the present day on the ground that CTRE has continued to profit from the alleged breach of its fiduciary duty to VEX.

connection with the Falcon 500 or the Kraken X60 motors, this "necessarily could include third-party licensing agreements not relevant to the claims or defenses of either party in this lawsuit." P. Br. Ex. D (ECF No. 49-4) at 6. Because VEX's claims for breach of fiduciary duty and unfair competition mention only VEX's endeavors with WestCoast, the court sustains this objection insofar as it applies to agreements with parties other than WestCoast. The court overrules the objection, however, as to agreements with, or assignments to, WestCoast.

5

In response to VEX's RFP No. 7, which asks for internal documents and communications relating to certain categories of information, CTRE makes a similar objection to that lodged to the other requests previously discussed, with the added assertion that it requests documents and communications "referring or relating to sixteen (16) different categories of information, the production of which would be voluminous." P. Br. (ECF No. 49) at 17. In addition to suffering from the same lack of specificity and substantive deficiencies discussed *supra* at § II(C)-(D)(2), these boilerplate objections provide no explanation for why the requested information would be disproportionately voluminous given the needs of the case, other than a recitation of what information is requested. These conclusory statements are thus insufficient to resist the discovery requests.

6

Because CTRE's objections are insufficient to resist the relevant discovery requests, the court overrules CTRE's objections to the identified discovery requests and grants VEX's

-13-

motion to compel, subject to the limitation that RFP No. 2 is confined in scope to agreements with, and assignments to, WestCoast. CTRE is ordered to answer VEX's interrogatories Nos. 6, 8, and 9 and to produce the materials requested in VEX's RFP Nos. 2, 4, 6, 7(i-l), 8, and 13 within 14 days of the date this memorandum opinion and order is filed.[11]

### III

The court next addresses VEX's motions for leave to amend the scheduling order and the trial setting order.

### A

Under the December 22, 2023 scheduling order, the parties were required to designate expert witnesses by November 4, 2024 and designate rebuttal expert witnesses by December 18, 2024. Discovery was due by April 18, 2025, motions were due May 9, 2025, and the trial was set for the two-week docket of September 8, 2025. On February 26, 2025 VEX moved for leave to amend the scheduling order and the trial setting order to set the following deadlines:

> Expert Witnesses/Reports: May 9, 2025
> Rebuttal Witnesses/Reports: June 9, 2025
> Discovery: July 18, 2025
> Summary Judgment Motions/Other Motions: August 18, 2025
> Trial: October 27, 2025

P. Br. (ECF No. 52) at 10. On March 25, 2025 the parties filed a joint stipulation agreeing to extend the deadline for discovery to June 20, 2025 and to extend the deadline for

---

[11]Because VEX has not requested relief under Rule 37(a)(5)(A), the court declines to award it at this time.

dispositive motions to July 11, 2025.  On March 27, 2025 the court amended these two deadlines, thereby mooting in part VEX's motion to amend the scheduling order.  The remaining requests for relief in VEX's motions are pending.

B

Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent."  *See Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997).  "The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order[,]" who must show that, despite its diligence, it could not reasonably have met the relevant scheduling deadlines.  *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.).

To determine whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: "(1) the party's explanation; (2) the importance of the requested relief; (3) potential prejudice in granting the relief; and (4) the availability of a continuance to cure such prejudice."  *Id.* (citing *S & W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).  The court evaluates these factors holistically and "does not mechanically count the number of factors that favor each side."  *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

-15-

C

1

The court first considers VEX's explanation for seeking to extend the deadlines to designate expert and rebuttal witnesses and extend the discovery and motion deadlines to a greater extent than that to which the parties have stipulated. VEX requests these extensions so that it can designate a software expert to analyze the source code that it has requested from CTRE and WestCoast. As grounds for its failure to designate a software expert by the initial deadline, VEX explains that it did not at first retain or designate a software expert in hopes of avoiding the expense of doing so while attempting to settle the case. In June 2024, after commencing discovery, the parties opted to explore settlement through mediation rather than complete discovery and take depositions. VEX asserts that its preferred software expert, Monty Myers of Eureka Software Solutions, Inc., charges an upfront, non-refundable cash retainer of $10,000, which VEX "wanted to avoid paying . . . until after exhausting all reasonable efforts at settlement." P. Br. (ECF No. 52) at 6. VEX posits that it chose to attempt to settle the case in mediation rather than complete discovery and take depositions, and that it was justified in not designating a software expert by the court-ordered deadline because it wanted to avoid the cost of retaining its preferred expert until it was clear that a settlement would not be reached. Mediation was originally scheduled for October 10, 2024, prior to the November 4, 2024 deadline to designate an expert, but it was then rescheduled for December 3, 2024, which was after the discovery deadline. After 1½ days of mediation on December 3 and December 9, settlement was not reached. Despite the November 4, 2024

-16-

deadline to designate experts, VEX did not move to amend the scheduling order to extend that deadline until February 26, 2025.

"[E]ngaging in settlement discussions does not constitute good cause for modification of a scheduling order because it does not excuse Plaintiff's responsibility to comply with the court-ordered deadlines." *Holder v. Healthcare Serv. Corp.*, 2020 WL 95634, at *3 (N.D. Tex. Jan. 8, 2020) (Lindsay, J.). Moreover, it is not apparent why VEX waited until February 26, 2025 to move to amend the scheduling order considering its position that the issue of software ownership is "at the heart of this case," P. Br. (ECF No. 52) at 6, when it knew that the date of mediation would fall after the expiration of the original deadline. Courts regularly consider a party's failure to timely seek an extension of deadlines when determining whether the party was diligent. *See, e.g.*, *Holder*, 2020 WL 95634 at *3 (noting that plaintiff failed to seek an extension of any deadline until two weeks after the completion of discovery deadline); *Sustainable Modular Mgmt., Inc. v. Travelers Lloyds Ins. Co.*, 2021 WL 4822017, at *5 (N.D. Tex. Oct. 15, 2021) (Fitzwater, J) (noting that plaintiff offered no explanation for why it did not move for an extension of the deadline for amending the pleadings after receiving voluminous document production). Despite ample notice of the original deadline to designate expert witnesses, VEX did not diligently attempt to comply with the deadline or to secure an amended scheduling order to extended the deadline before it expired, even after it became apparent that the rescheduled mediation would not be completed until after the deadline to designate experts. And VEX still waited almost three months after mediation proved unsuccessful to move to extend the deadline. There is no

indication why VEX could not have acted more diligently, either by designating a software expert to opine on an issue that VEX deems central to this case, or, if avoiding this expense was deemed paramount, by moving to extend this deadline before it expired on November 4, 2024.

VEX provides two additional, although ultimately unpersuasive, explanations for its decision not to designate a software expert by the November 4, 2024 deadline. It points out that CTRE has not produced any source code, so there was nothing for a software expert to review or consider. And VEX maintains that WestCoast produced a document after the expert designation deadline that supports VEX's claim that CTRE breached its fiduciary duty by incorporating jointly-owned source code into a competing motor that CTRE developed with WestCoast, thus necessitating the designation of a software expert. Neither of these explanations, however, shows that, despite VEX's diligence, it could not have reasonably met the expert designation deadline.

Although VEX did not possess the source code that it intended to have an expert analyze, the timeline of events shows that VEX lacked diligence in pursuing the desired source code in order to comply with the expert designation deadline. CTRE provided its responses and objections to VEX's discovery requests, including its objection to VEX's request for source code, on July 29, 2024. VEX did not serve additional discovery or challenge the sufficiency of CTRE's responses until it filed a motion to compel discovery responses on January 30, 2025, after mediation had already been unsuccessful and almost three months after the deadline to designate experts had passed. And VEX did not attempt

to subpoena any source code from WestCoast until December 13, 2024, also after the deadline to designate experts had elapsed.  VEX may not now use this lack of diligence in pursuing the source code to justify its failure to timely comply with the scheduling order, nor can it be used to justify VEX's desired amendment to the scheduling order.

As for VEX's suggestion that the document WestCoast produced justifies an extension of this deadline (because it is evidence that software that VEX and CTRE both owned was used in a competing product that CTRE developed with WestCoast), this would only serve as evidence to support a claim on a theory that VEX had already alleged in its complaint and that it already maintained was a central issue in this case.[12]  Moreover, the document in question was produced in response to a subpoena that was not issued until more than one month after the deadline to designate experts expired.  Neither of these additional justifications, therefore, constitutes a reasonable explanation for VEX's failure to designate a software expert by the deadline to do so.

Ultimately, VEX's lack of diligence in pursuing discovery on an important aspect of

---

[12]VEX cites *Sustainable* for the proposition that the discovery of new facts through depositions and document productions can justify amending the scheduling order.  The instant case, however, is distinguishable from *Sustainable*.  *Sustainable* involved a witness who was deposed after the deadline for general discovery had expired, but who was permitted to be deposed under a court order entered in response to the parties' joint motion, and the moving party "established that it could not have known the need for the additional discovery it [sought] until after [the deposed witness] testified."  *Sustainable*, 2021 WL 4822017 at *9.  In the instant case, VEX has failed to demonstrate that it could not have known of the potential importance of designating a software expert until this document was produced, thus necessitating amending the scheduling order.  To the contrary, this document supports a claim for breach of fiduciary duty under a theory already alleged in VEX's second amended complaint.

its case does not justify amending the deadline to designate an expert to enable VEX to designate a software expert to analyze software that VEX was not diligent in obtaining. The court therefore concludes that VEX's explanation fails to establish that, despite its diligence, it could not have reasonably met the scheduling deadline for designating experts. VEX's explanation for seeking to extend the deadlines to designate expert (and, in turn, rebuttal) witnesses weighs in favor of denying VEX's motion.

2

The court next addresses the importance of the requested relief. VEX contends that the extension of the deadline to designate experts is extremely important because the software expert's opinion could be critical in determining ownership of the software, which is "at the heart of VEX's breach of contract, breach of fiduciary duty, unfair competition, conversion, and trespass to chattels claims as well as VEX's defenses under the Copyright Act." P. Br. (ECF No. 52) at 7. CTRE has not refuted this reasoning. The court therefore finds that the relief VEX seeks—i.e., the ability to designate a software expert—is important to the resolution of this case.

3

The court next considers together the third factor—the potential prejudice to CTRE in allowing this modification to the scheduling order—and the fourth factor—the availability of a continuance to cure any such prejudice.

VEX contends that CTRE will not be prejudiced by the modification of these deadlines because it had ample notice that ownership of the software is at issue in the suit.

CTRE counters that it will be prejudiced because it has relied in good faith on VEX's prior disclosures in determining that it does not need experts and has defended this case accordingly; because this would require CTRE to bear significant expense to find and retain its own software expert; and because CTRE is entitled to a timely adjudication of the claims against it.

It is evident that CTRE will incur prejudice and cost if the deadlines to designate experts and rebuttal witnesses are reopened.  But the court has relieved timing-related burdens by extending the deadlines for discovery and dispositive motions and resetting the trial for the two-week docket of November 3, 2025.

As for increased expenses, this court has held that "[p]rejudice in the relevant sense comes into play when the opposing party incurs unnecessary expenses as a result of the timing of the [requested amendment to the scheduling order]."  *Sustainable*, 2021 WL 4822017, at *11.  Although CTRE will likely incur additional expense as a result of extending the deadline to designate experts, CTRE does not suggest that this expense will be a result of the timing of the amendment to the scheduling order rather than the fact that VEX will be permitted to designate a software expert.  Because the court is continuing the trial and the timing of the amendment will not prejudice CTRE in the relevant sense, this factor weighs in favor of granting VEX's motion.

4

The court now considers the above-discussed factors holistically and finds that the factors weigh in favor of denying leave to amend the scheduling order.  *See Serv. Temps*,

2009 WL 3294863, at *3.  Although a continuance might lessen any prejudice to CTRE

caused by allowing VEX to designate a new expert witness at this late stage in the trial, and

despite the potential importance of such an expert, VEX has not shown that, despite its

diligence, it could not reasonably have met the original scheduling deadlines.  *See, e.g.,*

*Mallory v. Lease Supervisors, LLC*, 2019 WL 3253364, at *4 (N.D. Tex. July 19, 2019)

(Fitzwater, J.) ("Courts deny motions to amend the scheduling order when the moving party

fails to demonstrate that, despite [its] diligence, [it] could not have reasonably met the

scheduling deadline.")  (quoting *Matamoros v. Cooper Clinic*, 2015 WL 4713201, at *3

(N.D. Tex. Aug. 7, 2015) (Fitzwater, J.)); *see also Sustainable*, 2021 WL 4822017, at *7

(denying a motion to extend the deadline to file a second amended complaint despite the

requested amendment's importance and the lack of incurable prejudice to the other party

because the moving party "failed to demonstrate that, despite its diligence, it could not have

reasonably met the scheduling deadline").  As this court has previously explained:

> [i]f the absence of undue prejudice or the availability of a
> continuance to cure such prejudice were alone determinative, the
> Rule 16(b)(4) standard would not be one of "good cause"; it
> would be an "absence of incurable prejudice" standard.  A
> moving party who, for example, had shown a complete lack of
> diligence and who undoubtedly could reasonably have met the
> scheduling deadline would still be able to obtain an amended
> scheduling order merely by demonstrating that the opposing
> party would not be prejudiced.  But the standard is "good
> cause," and the good cause standard focuses on the diligence of
> the party seeking to modify the scheduling order.

*Matamoros*, 2015 WL 4713201, at *3.  Here, VEX's apparent lack of diligence in

designating a software expert despite knowing the potential importance of such an expert,

and its lack of diligence in moving to amend the scheduling order after deciding not to timely designate a software expert, neither justifies delaying this trial to a greater extent than does today's decision nor supports reopening the designation of expert witnesses.  Accordingly, considering the factors holistically, the court concludes that VEX has failed to satisfy the Rule 16(b)(4) good cause standard.  VEX's motion to amend the scheduling order is therefore denied, except that the court resets the trial to the two-week docket of November 3, 2025.

*    *    *

For the reasons explained, the court grants VEX's motion to compel, subject to the limitation on RFP No. 2 to agreements with, or assignments to, WestCoast; denies VEX's motion to amend the scheduling order with respect to the expert and rebuttal witness deadlines; and resets the trial for the two-week docket of November 3, 2025.

**SO ORDERED**.

May 13, 2025.

SIDNEY A. FITZWATER
SENIOR JUDGE

-23-